## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**RONALD R. PHILLIPS, et al.,**

      **Plaintiffs,**

                              **Case No. 2:14-cv-2730**

    **v.**                            **JUDGE GREGORY L. FROST**

                                      **Magistrate Judge Mark R. Abel**

**MIKE DEWINE, et al.,**

      **Defendants.**

### OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) a motion to dismiss filed by Defendants Mike DeWine and John Kasich (ECF No. 13), a memorandum in opposition filed by Plaintiffs (ECF No. 16), and a reply memorandum filed by DeWine and Kasich (ECF No. 19); and

(2)  a motion to dismiss filed by Defendants Gary Mohr and Donald Morgan (ECF No. 14), a memorandum in opposition filed by Plaintiffs (ECF No. 17), and a reply memorandum filed by Mohr and Morgan (ECF No. 18).

For the reasons that follows, this Court **GRANTS** the motions to dismiss.  (ECF Nos. 13, 14.)

### I.  Background

Plaintiffs Ronald R. Phillips, Grady Brinkley, Raymond Tibbetts, and Robert Van Hook are inmates who have been sentenced to death by the State of Ohio.  They have brought this action to challenge the constitutionality of a soon-to-be-effective statutory scheme that addresses confidentiality of information concerning lethal injection in Ohio.  This statutory framework, enacted via Substitute House Bill No. 663 ("H.B. 663") in November 2014, amends Ohio

Revised Code § 149.43 and creates two new statutes, Ohio Revised Code §§ 2949.221 and 2949.222.

The amendment to § 149.43 modified the definition of "public record" so that it does not include "information and records that are made confidential, privileged, and not subject to disclosure under divisions (B) and (C) of section 2949.221 of the Revised Code."  Ohio Rev. Code § 149.43(A)(1)(cc).

The newly created § 2949.221 provides:

(A) As used in this section:

(1) "Person" has the same meaning as in section 1.59 of the Revised Code.

(2) "Licensing authority" means an entity, board, department, commission, association, or agency that issues a license to a person or entity.

(3) "Public office" has the same meaning as in section 117.01 of the Revised Code.

(B) If, at any time prior to the day that is twenty-four months after the effective date of this section, a person manufactures, compounds, imports, transports, distributes, supplies, prescribes, prepares, administers, uses, or tests any of the compounding equipment or components, the active pharmaceutical ingredients, the drugs or combination of drugs, the medical supplies, or the medical equipment used in the application of a lethal injection of a drug or combination of drugs in the administration of a death sentence by lethal injection as provided for in division (A) of section 2949.22 of the Revised Code, notwithstanding any provision of law to the contrary, all of the following apply regarding any information or record in the possession of any public office that identifies or reasonably leads to the identification of the person and the person's participation in any activity described in this division:

(1) The information or record shall be classified as confidential, is privileged under law, and is not subject to disclosure by any person, state agency, governmental entity, board, or commission or any political subdivision as a public record under section 149.43 of the Revised Code or otherwise.

(2) The information or record shall not be subject to disclosure by or during any judicial proceeding, inquiry, or process, except as described in division (B)(4) of this section or in section 2949.222 of the Revised Code.

2

(3) The information or record shall not be subject to discovery, subpoena, or any other means of legal compulsion for disclosure to any person or entity, except as described in division (B)(4) of this section or in section 2949.222 of the Revised Code.

(4)(a) If the information or record pertains to the manufacture, compounding, importing, transportation, distribution, or supplying of any of the items or materials described in division (B) of this section, the person or entity that maintains the information or record shall disclose the information or record to the Ohio ethics commission and the commission may use the information or record, subject to division (B)(1) of this section, only to confirm the following:

(i) That the relationship between the person and the department of rehabilitation and correction is consistent with and complies with the ethics laws of this state;

(ii) That at the time of the specified conduct, the person has all licenses required under the laws of this state to engage in that conduct and the licenses are valid.

(b) If the Ohio ethics commission receives any information or record pursuant to division (B)(4)(a) of this section, the commission shall complete its use of the information or record for the purposes described in that division within fourteen days of its receipt and shall promptly report its findings to the director of rehabilitation and correction.

(C)(1) If, at any time prior to the day that is twenty-four months after the effective date of this section, an employee or former employee of the department of rehabilitation and correction or any other individual selected or designated by the director of the department participates or participated in the administration of a sentence of death by lethal injection, as provided for in division (A) of section 2949.22 of the Revised Code, subject to division (C)(2) of this section and notwithstanding any other provision of law to the contrary, the protections and limitations specified in divisions (B)(1), (2), and (3) of this section shall apply regarding any information or record in the possession of any public office that identifies or reasonably leads to the identification of the employee, former employee, or other individual and the employee's, former employee's, or individual's participation in the administration of the sentence of death by lethal injection described in this division.

(2) Division (C)(1) of this section does not apply with respect to information or a record that identifies or reasonably leads to the identification of the director of rehabilitation and correction or the warden of the state correctional institution in which the administration of the sentence of death takes place.

(D) The protections and limitations specified in divisions (B)(1), (2), and (3) of this

3

section regarding information and records that identify or may reasonably lead to the identification of a person described in divisions (B) or (C) of this section and the person's participation in any activity described in the particular division are rights that shall be recognized as follows:

(1) With respect to a person that is an individual, without any requirement for the person to take any action or specifically apply for recognition of such rights.

(2) With respect to a person that is not an individual, the rights do not exist unless the person requests to have the rights recognized by applying in writing to the director of rehabilitation and correction.

The director of rehabilitation and correction by rule shall establish the procedure according to which a person who is not an individual may apply in writing for the rights described in divisions (B)(1), (2), and (3) of this section. The director shall approve an application that is submitted in compliance with the rules. A person whose application is approved is entitled to the rights for twenty years after the person ceases the qualifying activity as contemplated by the first paragraph of division (B) of this section. The director shall notify any person, who is not an individual and who is entitled to the rights, of the application procedures.

(E) If a person or entity that, at any time prior to the day that is twenty-four months after the effective date of this section, participates in, consults regarding, performs any function with respect to, including any activity described in division (B) of this section, or provides any expert opinion testimony regarding an execution by lethal injection conducted in accordance with division (A) of section 2949.22 of the Revised Code is licensed by a licensing authority, notwithstanding any provision of law to the contrary, the licensing authority shall not do any of the following as a result of that participation, consultation, performance, activity, or testimony by the person or entity:

(1) Challenge, reprimand, suspend, or revoke the person's or entity's license;

(2) Take any disciplinary action against the person or entity or the person's or entity's licensure.

(F) A person may not, without the approval of the director of rehabilitation and correction, knowingly disclose the identity and participation in an activity described in the particular division of any person to whom division (B) of this section applies and that is made confidential, privileged, and not subject to disclosure under that division or of an employee, former employee, or other individual to whom division (C)(1) of this section applies and that is made confidential, privileged, and not subject to disclosure under that division. Any person, employee, former employee, or individual whose identity and participation in a specified activity is disclosed in

4

violation of this division has a civil cause of action against any person who discloses the identity and participation in the activity in violation of this division.  In a civil action brought under this division, the plaintiff is entitled to recover from the defendant actual damages, punitive or exemplary damages upon a showing of a willful violation of this division, and reasonable attorney's fees and court costs.

(G) If division (B), (C), or (D) of this section applies to a person with respect to any conduct or activity of the person occurring at a time prior to the day that is twenty-four months after the effective date of this section, the expiration of that twenty-four month period does not affect, add to, or diminish the protections and limitations specified in division (B) or (C), division (D), and division (E) of this section with respect to their application to that person.

Ohio Rev. Code § 2949.221.

Finally, the newly enacted § 2949.222 provides:

(A) As used in this section, "seal a record" means to remove a record from the main file of similar records and to secure it in a separate file that contains only sealed records accessible only to the court.

(B) The court promptly shall order the immediate sealing of records containing information described in division (B) or (C) of section 2949.221 of the Revised Code and the person's participation in any activity described in the particular division, whenever the records come into the court's possession.

(C) If a record containing information described in division (B) or (C) of section 2949.221 of the Revised Code and the person's participation in any activity described in the particular division, is subpoenaed or requested by a court order, the director of rehabilitation and correction shall provide the record.  If the court determines that the record is necessary for just adjudication, the court shall order the director to appear at a private hearing with a copy of the record and any other relevant evidence.  The information is not otherwise subject to disclosure unless the court, through clear and convincing evidence presented in the private hearing, finds that the person whose identity is protected appears to have acted unlawfully with respect to the person's involvement in the administration of a lethal injection as contemplated by the first paragraph of division (B) and by division (C)(1) of section 2949.221 of the Revised Code.

Ohio Rev. Code § 2949.222.

Claiming that portions of the foregoing statutes are unconstitutional under both the

United States Constitution and the Ohio Constitution, Plaintiffs filed the instant action in

5

December 2014.  The complaint names four defendants, all of whom Plaintiffs have sued in their official capacities: Ohio Attorney General Mike DeWine, Ohio Governor John Kasich, Director of the Ohio Department of Rehabilitation and Corrections Gary Mohr, and Warden of the Southern Ohio Correctional Facility Donald Morgan.  (ECF No. 1.)  Following transfer of the case to the undersigned's docket, Plaintiffs filed a motion for injunctive relief (ECF No. 4) and a motion to conduct expedited discovery (ECF No. 5).  Defendants DeWine and Kasich then filed a joint motion to dismiss (ECF No. 13), followed by Defendants Mohr and Morgan filing their own joint motion to dismiss (ECF No. 14).  This Court held a status conference to discuss all of the pending motions, which resulted in an expedited briefing schedule in order to enable the Court to consider all of the motions and file decisions in advance of the relevant statutes' effective date of March 23, 2015.  The parties have completed briefing on the motions to dismiss, which are ripe for disposition.

## II.  Discussion

### A.  Standards Involved

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction.  Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion . . . ."  *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  *See also Rapier v. Union City Non-Ferrous, Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the

6

evidence, the existence of federal subject matter jurisdiction").

Rule 12(b)(1) motions to dismiss based upon a lack of subject matter jurisdiction generally come in two varieties, either facial or factual attacks on the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 2004). A facial attack on the subject matter jurisdiction alleged by a complaint merely questions the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, a similar safeguard employed under Rule 12(b)(6) motions to dismiss. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). *See also Nat'l Ass'n of Minority Contractors v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002). As a result, this Court may weigh the evidence and resolve any factual disputes when adjudicating such a jurisdictional challenge. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 2004) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

Federal Rule of Civil Procedure 12(b)(6) in turn provides for dismissal on the grounds that Plaintiffs have failed to assert claims upon which the Court can grant relief. This analysis argument requires the Court to construe the complaint in Plaintiffs' favor, accept the factual allegations contained in that pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The United States Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently,

7

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable. *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

### B. Analysis

#### 1. Eleventh Amendment and Standing

Both DeWine and Kasich argue that this Court lacks jurisdiction over the claims against them because they are entitled to Eleventh Amendment immunity. Plaintiffs in turn argue that these defendants have the requisite connection to the challenged provisions of H.B. 663 so that they fall within the immunity exception recognized in *Ex parte Young*, 209 U.S. 123 (1908).

There is some basis for agreeing with Plaintiffs here, at least perhaps partially. For example, as the head of Ohio's executive branch, Kasich has the authority to appoint the Director of the Ohio Department of Rehabilitation and Corrections, who in turn has considerable duties under Ohio Revised Code § 2949.221(C)(1), (D), and (F). Kasich thus has oversight of and inherent influence on the decision making underlying the statutory scheme. This is arguably the requisite "some connection with enforcement of the statute[s]" that presents a sufficient

8

connection with the statute[s] to fall under the *Ex parte Young* exception." *Am. Civil Liberties Union of Missouri Found. v. Lombardi*, No. 13-4223-CV-C-BP, 2014 WL 6306348, at *4 (W.D. Mo. Nov. 7, 2014).

There is some disagreement over whether a court must resolve an Eleventh Amendment issue first when another issue would dispose of an action in favor of the party asserting the immunity. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 416-17 (3rd Cir. 2003) (collecting cases on each side of circuit split). The Sixth Circuit does not appear to mandate always addressing the Eleventh Amendment issue first, at least in certain circumstances. *See S.L. ex rel K.L. v. Pierce Twp. Bd. of Trs.*, 771 F.3d 956, 961 (6th Cir. 2014); *United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006); *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006). Arguably, because DeWine and Kasich have raised the Eleventh Amendment as a threshold issue here, the Court should address that issue on the merits first. But DeWine and Kasich also incorporate in their motion all of the arguments for dismissal raised in the motion to dismiss filed by Mohr and Morgan. (ECF No. 13, at Page ID # 502.) Because these arguments lead to the dismissal of all of the claims, any error in the order of the analysis is without consequence in this action. Accordingly, this Court will bypass the Eleventh Amendment issue or will assume for the sake of argument that DeWine and Kasich fit within the *Ex parte Young* exception and then proceed directly to the dispositive arguments.

Defendants argue that this Court lacks subject matter jurisdiction because Plaintiffs do not have standing to challenge Ohio Revised Code §§ 2949.221(E) and (F). The United States Supreme Court has explained that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of*

9

*Wildlife*, 504 U.S. 555, 560 (1992).  Thus, it is an axiomatic principle of standing that no case may be had without injury-in-fact.  *See id*. at 561.  This injury, described as "the invasion of a legally protected interest," must be concrete and affect a plaintiff in a personal and individual way, and it cannot be conjectural or hypothetical.  *Id.* at 560.  Rather, the requisite injury  must be actual or imminent.  *Id.*  Moreover, it is a requirement that a favorable decision would likely redress the injury; mere speculation that redress could occur is insufficient.  *Id.* at 561.

The Sixth Circuit Court of Appeals has echoed this well-settled construction of the injury-in-fact component of standing, stating:

> [N]o plaintiff can litigate a case in federal court without establishing *constitutional* standing, which requires a showing that the plaintiff has suffered (1) an injury that is (2) "fairly traceable to the defendant's allegedly unlawful conduct" and that is (3) "likely to be redressed by the requested relief."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  These three factors constitute "the irreducible constitutional minimum of standing."  *Id.*  To ignore these minimum requirements "would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of the concerned bystanders.' "  *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 473 (1982) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007).  *See also Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) ("to establish standing to bring suit, a plaintiff must show that (1) he or she has 'suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision' " (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000))).  Thus, the appellate court has concluded, "the constitutional standing requirement of a 'distinct and palpable injury that is likely to be redressed if the requested relief is granted . . . states a limitation on judicial power,

10

not merely a factor to be balanced in the weighing of so-called 'prudential' considerations.' "
*Prime Media, Inc.*, 2007 WL 1324951, at *4 (quoting *Valley Forge Christian Coll.*, 454 U.S. at
475).

Applying the foregoing analytic framework, the Court concludes that Plaintiffs'
challenges to Ohio Revised Code §§ 2949.221(E) and (F) are not tied to actual or imminent
injuries, but are instead based on conjectural or hypothetical injuries, some of which are in fact
based on a misreading of the statutory scheme.  As such, they lack standing to challenge these
two provisions of H.B. 663.

Ohio Revised Code § 2949.221(E) prohibits licensing authorities from disciplining
individuals or entities who are involved in Ohio's lethal injection process.  Ohio Revised Code §
2949.221(F) in turns provides for a private right of action against a person who unlawfully
discloses specific information from a public office.  As discussed in the following section, H.B.
663 does not suppress speech or the ability to oppose the death penalty.  It also does not prevent
Plaintiffs from speaking to their intended audience.  Rather, the statutory scheme simply cuts off
Ohio and its employees as a source of specific information for both proponents and opponents of
the death penalty.  Although Plaintiffs argue that they have standing based on more than a mere
right of access argument, none of their arguments present a requisite distinct and palpable injury.

For example, Plaintiffs assert that an inability to obtain discipline against medical
personnel involved in future Ohio executions as a result of Ohio Revised Code § 2949.221(E)
presents an injury.  Plaintiffs make much of DeWine's comments in the media that no executions
can occur without the involvement of medical personnel, with such involvement hinging on the
statutory protection Ohio Revised Code § 2949.221(E) affords.  Absent such protection, the

reasoning follows, the necessary medical personnel will decline to participate in future executions and Ohio will necessarily stop conducting executions. But this argument simply attempts to bootstrap DeWine's oddly speculative if not unduly hyperbolic comments into a factual basis for standing. DeWine of course does not control Ohio's execution process and cannot dictate whether it proceeds; that responsibility ultimately lies with Kasich. There is thus no basis for concluding on the facts pled that the existence or absence of Ohio Revised Code §§ 2949.221(E) would in fact affect the scheduling and carrying out of future executions in Ohio. This punctures Plaintiffs' argument that their inability to appeal to licensing boards effectively presents standing.

Plaintiffs' assertion of injuries arising from Ohio Revised Code § 2949.221(F) is equally unsuccessful. Plaintiffs argue that they and others cannot disclose information for fear of civil liability that the statute imposes. As discussed below, however, this argument is based on a misreading of how the statutory scheme operates. Ohio Revised Code § 2949.221(F) reaches only Ohio employees in a public office.

Plaintiffs also assert that standing exists because they are asserting the facial challenge that H.B. 663 is overbroad. Defendants argue that because overbreadth is not a claim pled in Plaintiffs' complaint, the Court cannot find that standing exists based this argument. Assuming *arguendo* that overbreadth is a component of this case, the Court recognizes that it can in some instances serve as a basis for standing. The United States Supreme Court has explained that "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech

12

or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). But a correct reading of the statutory scheme (as discussed below) indicates that the rights involved in Ohio Revised Code § 2949.221(F) are those of government employees and not the *everyone, everywhere* premise underlying Plaintiffs' facial challenge. But nothing in Ohio Revised Code § 2949.221(F) prevents government workers from speaking out against the death penalty or any aspect of Ohio's execution protocol and policy. Rather, the statutory provision targets the use of information obtained in an official capacity as a government employee. This is an access issue, not an issue involving constitutionally protected speech or expression, and as discussed below, there is no right of access to this government information for private purposes, including by government workers. In other words, there is no facial challenge because there is no First Amendment issue.

Because Plaintiffs lack standing to challenge Ohio Revised Code §§ 2949.221(E) and (F), dismissal of the claims targeting these provisions is warranted.

### 2. Free Speech and Prior Restraint

In their first claim, Plaintiffs assert that H.B. 663 violates their right to free speech, while in their second claim, Plaintiffs aver that H.B. 663 effectuates a prior restraint, both in violation of the First Amendment.[1] At least one federal judge has recognized that a challenge to an execution protocol secrecy statute presented a plausible First Amendment prior restraint claim. *Am. Civil Liberties Union of Missouri Found. v. Lombardi*, 23 F. Supp.3d 1055, 1062 (W.D. Mo. Nov. 7, 2014).

Defendants nonetheless seek dismissal on the grounds that Plaintiffs base their claims on

---

[1] Plaintiffs also rely upon the Ohio Constitution, which the Court will discuss *infra*.

a misreading of the statutory scheme and a misunderstanding of the relevant constitutional law. Both points prove dispositive here in light of the United States Supreme Court's holding that "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978). Absent a historical tradition of the type of access Plaintiffs seek, H.B. 663 tracks just such a permissible limitation on access to governmental information recognized by the Supreme Court.

Ohio Revised Code § 2949.221(B) and (C)(1) apply to "any information or record in the possession of any public office." Section 2949.221(F) in turn is limited to (B) and (C)(1), which as Defendants expressly concede means that (F) applies only disclosure of *the information in the possession of a public office*. In other words, the information that (F) targets is the information(B) and (C)(1) address, which targets only specific information held in a public office, not the same information held anywhere else. The end result is that these three provisions "prohibit [public] officials from disclosing the confidential information" and provide a private remedy for such disclosure. (ECF No. 18, at page ID # 631.)

It is perhaps understandable why Plaintiffs read Ohio Revised Code § 2949.221(F) otherwise. They assert that it creates a civil penalty for the dissemination of specific information regardless of the source of that information. Section 2949.221(F) is far from being a model of legislative clarity or an exemplar of how to communicate in text. But careful parsing of the statutory provision indicates that it targets the knowing disclosure of two things. The first is the *identity of a person* addressed in (B) or (C)(1) and the second is *that person's participation* in an activity addressed in (B) or (C)(1). *See* Ohio Rev. Code § 2949.221(F) ("A person may not . . .

14

knowingly disclose the identity and participation in an activity described in the particular division of any person to whom division (B) of this section applies and that is made confidential, privileged, and not subject to disclosure under that division or of an employee, former employee, or other individual to whom division (C)(1) of this section applies and that is made confidential, privileged, and not subject to disclosure under that division.").  Because (F) employs the language "under that division," the scope of the civil claim is limited to the reach of (B) and (C)(1), which only make the identity and participation information "confidential, privileged, and not subject to disclosure" in the particular and limited context of an Ohio public office.  In other words, (F) does not extend to everyone who knows of protocol participants; because it only reaches "any information or record in the possession of any public office" in the language of (B) and (C)(1), (F) is inherently limited to those who work in that office.  The statutory scheme simply cuts off the government as the source of the division (B) and (C)(1) information and places a government worker on the hook for acting as a source.

Ohio Revised Code § 2949.222 effectuates a similar approach to information in the litigation context.  Section § 2949.222 applies only to a category of discovery that may or may not be disclosed via court order after a private hearing.  Under the statutory scheme, as Defendants expressly concede, an individual would not run afoul of  § 2949.222 if he or she discloses the same information contained in the protected discovery provided he or she learned that information outside the discovery process.  The statutory scheme simply cuts off government-provided discovery as the source of the information.

Neither of the foregoing statutory provisions tie the exercise of a First Amendment right to the prior approval of the Director of the Ohio Department of Rehabilitation and Corrections or

another governmental actor.  Nor do they present impermissible government interference with the flow of information or the expression of ideas.  The statutory scheme simply precludes state actors from helping Plaintiffs and others develop their messages and exercise their right to communicate those messages.

Certainly, much of the language of H.B. 663 could have been drafted more clearly.  But a careful reading of the statutory scheme reveals that Plaintiffs have not pled plausible claims. The question here is not whether any of the information at issue should be made available to the public by Ohio's state actors, but whether the First Amendment compels such disclosure in this particular context.  It does not, for the same reasons recognized by the Third Circuit in a government-held information case outside the execution context:

> The First Amendment . . . seeks to promote the ideal of an informed electorate by barring government *interference* with the flow of information and ideas to the public.  The founding fathers intended affirmative rights of access to government-held information, other than those expressly conferred by the Constitution, to depend upon political decisions made by the people and their elected representatives.  This conclusion finds support in the text of the First Amendment, the historical gloss on that text, and the First Amendment caselaw.

*Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1167 (3rd Cir. 1986).  In other words, regardless of any debate over the soundness of the decision realized in H.B. 663, the statutory scheme represents a permissible limitation on right of access enacted by the representatives of Ohio's citizens.  This specific result of the democratic process sits beyond invalidation by the First Amendment and interference by the courts because "[n]either the free speech clause nor the structure of the government described by the Constitution yields any principled basis for deciding which government information must be made available to the citizenry and which need not."  *Capital Cities Media, Inc.*, 797 F.2d at 1171.  Defendants are therefore entitled to

dismissal of the free speech and prior restraint claims.

### 3. Equal Protection, Due Process, Right to Petition, and Right of Access

Plaintiffs' theory is that because H.B. 663 conceals from them information necessary to oppose adequately and to litigate meaningfully the constitutionality of Ohio's execution protocol, the statutory scheme violates their due process and equal protection rights, in addition to denying them the right to petition the government for redress of grievances and of the right to have meaningful access to the courts. For example, an underlying right that Plaintiffs seek to assert in challenging Ohio's execution protocol is the right to be free from cruel and unusual punishment under the Eighth Amendment. This implicates the Sixth Circuit's recognition that "[t]o demonstrate that Ohio seeks to impose 'cruel and unusual' punishment, [a plaintiff] must show that its protocol ignores a *'sure* or *very likely'* risk of serious pain 'and needless suffering,' . . . which 'creates a demonstrated risk of severe pain' that is 'substantial when compared to the known and available alternatives.' " *Cooey (Biros) v. Strickland*, 589 F.3d 210, 220 (6th Cir. 2009) (quoting *Baze v. Rees,* 553 U.S. 35, 128 S.Ct. 1520, 1531, 1537, 170 L.Ed.2d 420 (2008) (plurality opinion)). The Sixth Circuit has also recognized that inmates have a " 'heavy burden of demonstrating that a state's execution protocol is 'cruelly inhumane' in violation of the Constitution." *Id.* at 221.

A core premise of Plaintiffs' protocol challenge is that compounding in specific circumstances can present an Eighth Amendment violation as opposed to compounding generally. This must be a component of Plaintiffs' theory because if all compounding is unconstitutionally risky, then there is no need to know the particular circumstances, but if compounding under a specific set of facts is unconstitutionally risky, then the details matter. In

17

other words, Plaintiffs complain that they cannot meet their heavy burden of proving a substantial risk of an Eighth Amendment violation when Ohio bars them from getting the evidence they need to meet that burden.

Defendants reject Plaintiffs' argument for entitlement to the information that Plaintiffs seek, and the law supports this rejection.  Defendants seek dismissal of the due process and equal protection claims.  They argue that H.B. 663 does not treat Plaintiffs differently from any similarly situated individual and that it does not prohibit Plaintiffs from refuting evidence in Ohio's possession.  Defendants also seek the dismissal of the right to petition and right of access claims.  They argue "that a person does not have a First Amendment right of access to information . . . that the government has no duty to disclose."  (ECF No. 14, at Page ID # 530.)

Before this Court could eventually reach the issue of whether Ohio has sufficient interests underlying the statutory scheme created by H.B. 663, the threshold issue is whether the statutory scheme even affects a constitutional right so as to necessitate additional analysis.  If it does not, then Plaintiffs' complaint fails to state plausible claims for relief.

Persuasive authority informs today's analysis.  The Eleventh Circuit addressed a secrecy statute in the lethal injection context in *Wellons v. Commissioner, Georgia Department of Corrections*, 754 F.3d 1260, (11th Cir. 2014).  The Georgia statute at issue in that case classified "all 'identifying information' about a 'person or entity who participates in or administers the execution of a death sentence . . . [or] that manufactures, supplies, compounds, or prescribes the drugs, medical supplies, or medical equipment' used in an execution as a 'confidential state secret' not subject to disclosure."  *Id.* at 1262 (quoting O.C.G.A. § 42-5-36(d).  The plaintiff, an inmate sentenced to death, sought a declaratory judgment that the refusal to disclose information

18

protected by the statute violated his constitutional rights. That plaintiff's premise was that by denying him information about the compounded drug that Georgia was going to use to execute him, the state was "denying the information necessary to determine whether his Eighth Amendment rights [were] being violated." *Id.* at 1264. The Eleventh Circuit soundly rejected that argument, holding that "[n]either the Fifth, Fourteenth, or First Amendments afford [an inmate] the broad right 'to know where, how, and by whom the lethal injection drugs will be manufactured,' as well as 'the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters.' " *Wellons v. Comm'r, Georgia Dep't of Corr.*, 754 F.3d 1260, 1267 (11th Cir. 2014). This is important, because even though the plaintiff was before the court of appeals in the context of reviewing the denial of injunctive relief, the Eleventh Circuit's holding was not simply a failure of proof issue; the language employed states that there is no right to the information the plaintiff sought. No constitutional right means no plausible claim.

Other courts have agreed with this conclusion. For example, the United States District Court for the Middle District of Alabama recently relied upon the rationale of *Wellons* as an alternative reason for dismissing under Rule 12(b)(6) "a Fourteenth Amendment due process claim based on the secrecy surrounding Alabama's lethal injection protocol, procedures, and training" and "a First Amendment claim based on the inability of [an inmate] to access governmental proceedings and to discover details about Alabama's lethal injection protocol." *Frazier v. Thomas*, No. 2:13-cv-781-WKW, 2015 WL 65096, at *2 (M.D. Ala. Jan. 5, 2015). Similarly, last year the Fifth Circuit twice rejected the premise that the failure to provide all the information inmates wanted about an execution protocol implicated a liberty interest so that lack

19

of disclosure constituted a due process violation.  *Campbell v. Livingston*, 567 F. App'x 287, 289 (5th Cir. 2014); *Sells v. Livingston*, 750 F.3d 478, 481 (5th Cir. 2014).

The foregoing authority teaches that Plaintiffs have failed to state plausible claims under the First, Fifth, and Fourteenth Amendments.  Plaintiffs have misread the scope of the rights set forth in these amendments in an effort to transform them into a Constitution Open Records Right.  But just because Plaintiffs want or need information does not invariably entitle them to it under the Constitution.  Not all oversight requires absolute transparency, and the Eighth Amendment does not enlarge other qualified or limited rights depending on context.

This Court is cognizant that the harsh result that follows today's holding is a matter of some unease.  Dismissal unquestionably handicaps Plaintiffs' pursuit of their protocol challenge in related litigation.  Accordingly, even if the outcome and consequences dictated by the foregoing analysis do not defy the logic of the law, some would argue that they certainly defy common sense.  Fore example, a judge who concurred in judgment in *Wellons* wrote separately to "highlight the disturbing circularity problem created by Georgia's secrecy law regarding methods of execution in light of . . . circuit precedent."  *Wellons*, 754 F.3d 1260, 1267 (Wilson, J., concurring in judgment).  That judge explained:

> [The Eleventh Circuit] explained in *Mann v. Palmer* that "[a]fter *Baze,* an inmate who seeks a stay of execution must establish that the lethal injection protocol of his state creates a *demonstrated* risk of severe pain that is substantial when compared to the *known alternatives*."  713 F.3d 1306, 1315 (11th Cir. 2013) (emphasis added).  Although Wellons insists that his is not a "method of execution" claim, in order to succeed under the Eighth Amendment, he must show that the manner in which Georgia intends to execute him generates "a substantial risk of serious harm or an objectively intolerable risk of harm."  *Baze v. Rees*, 553 U.S. 35, 51, 128 S.Ct. 1520, 1532, 170 L.Ed.2d 420 (2008) (internal quotation marks omitted).  Possibly due to his lack of information about the compound pentobarbital that will be used and the expertise of the people who will administer his execution, Wellons has not shown such a risk.  Indeed, how could he when the state has passed a law prohibiting him

from learning about the compound it plans to use to execute him? Although Wellons has been given the 2012 Lethal Injection Protocol which indicates that pentobarbital will be used, he also knows that Defendants have not had any FDA-approved pentobarbital in their possession since March of 2013, and thus can only assume they will be using a substance that purports to be pentobarbital but has been manufactured from unknown ingredients and in unknown circumstances by a compounding pharmacy. Without additional information about the method of his execution, it seems nearly impossible for Wellons to make the argument that Defendants' planned execution creates an "objectively intolerable risk of harm." *Id.*

Similarly, while I agree that Wellons has not provided sufficient support for his general due process or First Amendment claim, I have serious concerns about the Defendants' need to keep information relating to the procurement and nature of lethal injection protocol concealed from him, the public, and this court, especially given the recent much publicized botched execution in Oklahoma. Unless judges have information about the specific nature of a method of execution, we cannot fulfill our constitutional role of determining whether a state's method of execution violates the Eighth Amendment's prohibition against cruel and unusual punishment before it becomes too late.

*Id.* at 1267-68. The same troubling circularity exists here.

In execution protocol challenges, the law tells death-sentenced inmates to bring evidence into the courtroom while concurrently upholding a scheme that places the bulk of select evidence outside the reach of the inmates. The necessary is also the withheld: *you must give us that which you cannot have to give*. In order to challenge the use of a drug that will be used to execute them, inmates must explain why use of that drug presents a risk of substantial harm. But the inmates are not allowed to know from where the drug came, how specifically it was manufactured, or who was involved in the creation of the drug. This means the inmates can attempt to complain about the reliability of the drug without being afforded the information that would place the drug into a context in which the inmates and by extension the courts can evaluate the reliability based on more than impermissible speculation or perhaps unwarranted assumptions.

21

A proponent of Kafkaesque absurdity might be proud of such a byzantine method for pursuing the protection of a constitutional right, even if the drafters of the United States Constitution might not.  A right bereft of an effective, meaningful means to protect that right is arguably nothing more than an illusion to appease a society that conveniently and comfortably seeks to tell itself that it kills with fairness.  Society may or may not achieve that laudatory goal, but it would make sense to come to a conclusion on that issue based on something as likely helpful as *actual facts*.  But the issue pervading this action is not whether a different approach in the atypical context of lethal injection might be better, but whether a different approach is compelled.  Under the limited rights afforded all citizens under the Constitution, it is not, and Plaintiffs' claims based on pursuit of such a different approach warrant dismissal.

### 4. Ohio Constitution

As noted, Plaintiffs also assert that H.B. 663 violates Article I, Section 11 of the Ohio Constitution.  Plaintiffs seek a declaration in this regard.  Defendants argue that dismissal of this component of the case is warranted because the cited provision of the state constitution is not self-executing and cannot serve as an independent source for Plaintiffs' claims.  The state-constitution component of this action does not evade dismissal for three reasons.

First, although the parties do not focus on this point, it is well settled that "the free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and that the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution."  *Eastwood Mall, Inc. v. Slanco*, 68 Ohio St.3d 221, 222, 626 N.E.2d 59, 61 (1994).  There is no violation related to the Ohio Constitution here if there is no claim based on the United States Constitution.

22

Second, there is authority that Article I, Section 11 of the Ohio Constitution is not self-executing so as to support Defendants' argument for dismissal. The Supreme Court of Ohio appears to have resolved the issue in *Provens v. Stark County Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St.3d 252, 594 N.E.2d 959 (1992). The parties disagree as to the holding of *Provens*, but additional case law from Ohio informs that dispute. An intermediate appellate court in Ohio described the holding of *Provens* with ample clarity, stating:

> In *Provens v. Stark County Bd. of Mental Retardation & Developmental Disabilities* (1992), 64 Ohio St.3d 252, 254, 594 N.E.2d 959, the Ohio Supreme Court held that the right to freedom of speech conferred under Article 1, Section 11 of the Ohio Constitution is not self-executing and does not create a private cause of action.

*PDU, Inc. v. City of Cleveland*, No. 81944, 2003 WL 21555157, at *3, 2003-Ohio-3671 ¶ 18 (Ohio 8th Dist. Ct. App. July 10, 2003). The state court of appeals also analyzed the constitutional provision in light of case law subsequent to *Provens* and concluded that under the applicable test, "Sections 2, 11, and 16 of Article I of the Ohio Constitution are not self-executing provisions." 2003 WL 21555157, at *5, 2003-Ohio-3671 ¶ 27. At least one federal court has agreed. *Barksdale v. City of Cleveland*, No. 1:04 CV 2130, 2006 WL 7077216, at *4 (N.D. Ohio May 5, 2006).

Third, to the extent that the scope of the Ohio Constitution provision or whether it is self-executing could be said to be unresolved, this Court would exercise its discretion to decline to entertain a declaratory judgment claim based only on the state constitution's language. *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) ("The Declaratory Judgment Act provides that a district court 'may declare the rights and other legal relations of any interested party seeking such declaration . . . .' 28 U.S.C. § 2201(a)

(emphasis added).  This language affords the district court 'discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.' *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n,* 481 F.3d 414, 421 (6th Cir. 2007) . . . .").  The Sixth Circuit has explained that "[a] district court would be wise to decline jurisdiction if a declaratory judgment action involved novel, unsettled, or complex issues of state law."  *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014).  Given the recognized imprecision of the constitutional language at issue, this admonition from the court of appeals is well taken.  *See PDU, Inc.*, 2003 WL 21555157, at *4, 2003-Ohio-3671 ¶ 21 ("The language of Article I, Sections 2, 11, and 16 is not sufficiently precise to provide clear guidance to the courts with respect to enforcement of its terms or application of its provisions.").

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** the motion to dismiss filed by DeWine and Kasich (ECF No. 13) and the motion to dismiss filed by Mohr and Morgan (ECF No. 14).  The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

              /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE